1

```
 1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLORADO
 2
       Criminal Action No. 19-cr-0445-WJM
 3
       UNITED STATES OF AMERICA,
 4
       Plaintiff,
 5
       vs.
 6
       CURTIS ARGANBRIGHT,
 7
       Defendant.
 8     ------------------------------------------------------------
 9
                        REPORTER'S TRANSCRIPT
10                        (Change of Plea)
11     ------------------------------------------------------------
12        Proceedings before the HONORABLE WILLIAM J. MARTINEZ,
13     Judge, United States District Court for the District of
14     Colorado, commencing at 10:34 a.m., on the 18th day of
15     November, 2019, in Courtroom A801, United States Courthouse,
16     Denver, Colorado.
17
                              APPEARANCES
18
           BRYAN D. FIELDS, Assistant U.S. Attorney, 1801
19     California Street, Suite 1600, Denver, Colorado 80202,
       appearing for the plaintiff.
20
           NATHAN D. CHAMBERS, Nathan D. Chambers, LLC, 303 16th
21     Street, Suite 200, Denver, Colorado, AND
           L. DOUGLAS JEWELL, Law Office of Douglas Jewell, LLC,
22     3000 Youngfield Street, Suite 185, Wheat Ridge, Colorado
       80215, appearing for the defendant.
23
24                  MARY J. GEORGE, FCRR, CRR, RMR
                901 19th Street, Denver, Colorado 80294
25            Proceedings Reported by Mechanical Stenography
                  Transcription Produced via Computer
```

```
 1                     P R O C E E D I N G S
 2          (Call to order of the court at 10:34 a.m.)
 3              THE COURT:  All right, we are on the record in
 4     criminal case No. 19-cr-445, United States of America versus
 5     Curtis Arganbright.  I'll take appearances of counsel.
 6              MR. FIELDS:  Good morning, Your Honor.  Bryan
 7     Fields for the United States.  And I'm joined at counsel's
 8     table by Special Agent Kristen Varel with the FBI.
 9              THE COURT:  Good morning to the two of you.
10              MR. CHAMBERS:  Good morning, Your Honor.  Nathan
11     Chambers and Doug Jewell representing Curtis Arganbright,
12     who is present seated to my left.
13              THE COURT:  All right.  Good morning to the three
14     of you.
15              All right, Mr. Chambers, will you and your client
16     please approach the lectern.
17              MR. CHAMBERS:  Does the Court mind if Mr. Jewell
18     joins us?
19              THE COURT:  He can stand if he wants.  That's fine.
20              Ms. Frank, will you please administer the oath to
21     the defendant.
22              COURTROOM DEPUTY:  Please raise your right hand.
23          (Defendant sworn in)
24              THE COURT:  All right.  The record reflects that
25     Mr. Arganbright was charged by an information dated the 21st
```

1    of October of this year.  He was arraigned on that same day

2    at which time he entered a plea of not guilty to Count 1 of

3    the information.  Two days later, the defendant filed with

4    this Court a notice of disposition and he requested that

5    this matter be set for a change of plea hearing.  According

6    to the plea agreement reached between the parties, the

7    defendant wishes to enter a guilty plea to Count 1 charging

8    a violation of 18 United States Code Section 242.

9            I have before me Court Exhibit 1, which is the plea

10   agreement of the parties.  Exhibit 1 has been dated and

11   signed by the defendant, the defendant's attorneys, as well

12   as the Assistant United States Attorney and two trial

13   attorneys from the Department of Justice in Washington.

14           Also before me is Court Exhibit 2, which is the

15   Statement by Defendant in Advance of Plea of Guilty.

16   Exhibit 2 has been dated and signed by the defendant as well

17   as his attorney.

18           All right.  Mr. Arganbright, do you understand that

19   you are under oath and that if you answer any of my

20   questions falsely, your answers may later be used against

21   you in a separate prosecution for perjury?

22           THE DEFENDANT:  Yes, Your Honor.

23           THE COURT:  Do you understand you have the right to

24   remain silent and not to answer any of my questions?

25           THE DEFENDANT:  Yes, Your Honor.

1      THE COURT:  Do you give up your right to remain
2  silent in order to answer the questions I need to ask you at
3  this hearing?
4      THE DEFENDANT:  Yes, Your Honor.
5      THE COURT:  Did you understand the question?  Well,
6  you have the right to remain silent, but if you stand on
7  that right this will be a very short hearing.  So I'm
8  asking:  Do you waive, do you give up, that right to remain
9  silent in order to answer the questions I'm going to ask you
10  at this hearing?
11      THE DEFENDANT:  Yes.  Yes.
12      THE COURT:  Do you understand the question?
13      THE DEFENDANT:  Yes, Your Honor, I do.
14      THE COURT:  All right.  What is your true, correct,
15  and full name?
16      THE DEFENDANT:  Curtis Lee Arganbright.
17      THE COURT:  How old are you?
18      THE DEFENDANT:  42.
19      THE COURT:  What level of schooling have you
20  completed?
21      THE DEFENDANT:  I have a bachelor's degree.
22      THE COURT:  All right.  So I take it you can read
23  and write in the English language?
24      THE DEFENDANT:  Yes, Your Honor, I can.
25      THE COURT:  Are you now under the influence of any

1    medication, drug or alcohol?

2              THE DEFENDANT:  No, Your Honor.

3              THE COURT:  Is there anything about the way you

4    feel right now that prevents you from understanding what is

5    happening at this hearing?

6              THE DEFENDANT:  No, Your Honor.

7              THE COURT:  All right.  Based on the statements of

8    the defendant and my observations, I find he's competent to

9    proceed with this hearing.

10             Now, sir, have you read and discussed the charge to

11   which you'll be pleading guilty with your attorney?

12             THE DEFENDANT:  Yes, Your Honor, I have.

13             THE COURT:  Do you understand the charge to which

14   you'll be pleading guilty?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  All right.  All right, Mr. Chambers,

17   will you please outline for the record the important terms

18   of the parties' plea agreement.

19             MR. CHAMBERS:  Yes, Your Honor.  As the Court

20   indicated, Mr. Arganbright will be pleading guilty to Count

21   1, a single count information, alleging violation of 18

22   United States Code Section 242, deprivation of rights under

23   color of law.  He agrees to forfeit any certification he has

24   to be employed in law enforcement and not to seek further

25   employment in law enforcement; to register as a sex offender

1    as required by the states where he resides; and there are

2    appellate waivers -- a waiver of appellate rights and rights

3    to collateral attack detailed on pages 2 and 3 of the

4    indictment.

5          The Government, in exchange, would file no other

6    charges and recommend a three-level reduction for acceptance

7    of responsibility provided there's nothing inconsistent with

8    that acceptance between today's date and the time of

9    sentencing.  I think that those are the essential elements,

10   Your Honor -- or at least the main elements.

11         THE COURT:  So let me ask you some questions.  The

12   second item of the obligations of the defendant under the

13   agreement is that he's to forfeit his law enforcement

14   certification.  What are we talking about there?  Is that

15   his POST certification?

16         MR. CHAMBERS:  I think that's the only thing it

17   would involve.  Is that right, Mr. Jewell?

18         MR. JEWELL:  Yes.

19         THE COURT:  And so what -- what is entailed in

20   relinquishing that certification?

21         MR. CHAMBERS:  Mr. Jewell's more of a police

22   officer lawyer than me.

23         THE COURT:  All right.  Then --

24         MR. JEWELL:  Your Honor --

25         THE COURT:  -- I'll let him speak.

1          MR. JEWELL:  He could never reapply for POST --

2          THE COURT:  And how do I know that?

3          MR. JEWELL:  You have our word that he would never

4     do it.  Frankly, the Court may be aware that there are --

5     there was a state plea earlier and --

6          THE COURT:  Yes, I'm well aware of that.

7          MR. JEWELL:  And as a condition of that, he also

8     had to relinquish his right.

9          THE COURT:  All right.  So if he were to attempt to

10    obtain again or renew his POST certification, that would

11    be -- you agree that would be a violation of the plea

12    agreement?

13         MR. JEWELL:  Yes, Your Honor.

14         THE COURT:  All right.

15         MR. CHAMBERS:  I knew it was good for Mr. Jewell to

16    stand up here.

17         THE COURT:  Yes.  Good.  Two minds are better than

18    one.

19         How -- the third provision of the defendant's

20    obligation is that -- what -- he would no longer seek work

21    or future employment as a law enforcement officer in any

22    local, state, or federal law enforcement agency or seek

23    employment as a private security officer.  So, how is that

24    going to be enforced?

25         MR. CHAMBERS:  Well, I -- I assume that if there's

1    a custodial sentence, he wouldn't be able to do it.  And

2    then if he is on supervised release --

3           THE COURT:  What happens when he's -- he concludes

4    his custodial sentence?

5           MR. CHAMBERS:  Yeah.  And then he -- and then he is

6    placed on a term of supervised release following that; it

7    would be a condition of the supervised release.  Now, I

8    suppose, then, the next question is what happens when he

9    completes the term of supervised release.

10          THE COURT:  Right.

11          MR. CHAMBERS:  And I don't know, Your Honor.  I

12   hadn't thought about how that could be enforced at that

13   point.

14          THE COURT:  Let me ask the Government, because I

15   suspect that Mr. Fields and his cocounsel have thought about

16   this.

17          MR. FIELDS:  Yes, Your Honor.  At that point, if we

18   were to find out that he had employed -- or applied for a

19   job as a law enforcement officer, that would be a material

20   breach of the agreement, we would be allowed to refile

21   charges -- more serious charges against the defendant at

22   that point.

23          THE COURT:  Okay.  All right.  The fourth one,

24   registering as a sex offender, now that was a provision of

25   his plea agreement in state court; isn't that correct?

1          MR. JEWELL:  Yes, Your Honor.

2          THE COURT:  So has he already registered as a sex

3      offender?

4          MR. JEWELL:  Yes.

5          THE COURT:  Okay.  So in -- this is effectively

6      duplicative of that?  I mean, there's not a -- let me ask it

7      this way:  There's not a separate -- as far as you know, at

8      least as far as I understand it, there's -- at least in the

9      state of Colorado, there's a registration that is mandatory

10     for individuals convicted of these types of crimes, but

11     there's not one for state court and one for federal court,

12     there's just one registry; isn't that correct?

13         MR. JEWELL:  That's my understanding.  And to the

14     extent the federal probation wants him to do a longer period

15     of time of registering, for example, it may modify the state

16     registration conditions already in place.  So he may have to

17     do a longer period or have some other federal conditions

18     just within the state system, as I understand it.

19         THE COURT:  Okay.  The last provision is waiver of

20     his appellate and collateral challenge rights.  And, Mr.

21     Chambers, as you know from prior hearings in front of me

22     that we'll get -- we'll circle back to that later in the

23     hearing.

24         I want to explore with you the offense level

25     enhancements and the disputes between the parties on that.

1    And, Mr. Fields, I'll ask you for your views and input on

2    that point in a few moments, but this is one of those rare

3    situations where the statutory cap is significantly below

4    what the guidelines would call for.  You would agree with

5    that, Mr. Chambers?

6             MR. CHAMBERS:  Yes.

7             THE COURT:  All right.  And so in some ways, it's

8    academic to be arguing about sentencing enhancements to a

9    guideline -- to an offense level which is relevant only for

10   a guidelines computation when, without sentencing

11   enhancements, we're already at multiples of the statutory --

12   statutory maximum, which, just to put on the record, is 120

13   months, 10 years.

14            But in any event, I -- because the Supreme Court is

15   clear that sentencing judges have to correctly calculate the

16   offense level and guideline range, I'll have to take up

17   those sentencing enhancements at the sentencing hearing, but

18   I just want to get the -- now, for now -- and then I'll get

19   to the Government -- the defendant's position on the

20   disputes on the sentencing enhancements.

21            MR. CHAMBERS:  Yes, Your Honor.  First of all,

22   you've correctly noted that the guideline range -- whether

23   it's calculated the way we calculate it or the way the

24   Government calculates it, it exceeds the statutory max in

25   either event.  But the specific enhancement that is in

1    dispute is the nature of the injury that the victim

2    sustained.  There is not a dispute about a two-level

3    enhancement pursuant to 2A3.1(b)(3) about the victim being

4    in the defendant's care.  The dispute has to do with the

5    nature and extent of the injuries.

6         We agree that for purposes of -- we agree that

7    because it's an element of the offense, even, that the

8    victim did suffer bodily injury, but we do not agree that

9    she sustained serious bodily injury, which would lead to the

10   four-level enhancement.

11        THE COURT:  So the difference between bodily injury

12   and serious bodily injury?

13        MR. CHAMBERS:  Yes.

14        THE COURT:  What's the defendant's position as to

15   why, in your view, the victim did not sustain serious bodily

16   injury?

17        MR. CHAMBERS:  Well, the Government believes that

18   there were certain vaginal injuries, and we believe that

19   he's not responsible for those.  And we think that the

20   evidence is very much in dispute about whether or not he

21   could have caused those injuries or did cause those

22   injuries.

23        THE COURT:  Okay.  All right.  You agree that the

24   two-level enhancement is appropriate under 2A3.1(b)(3) for

25   the defendant -- the victim, rather, being in the care or

1   custody of the defendant?

2           MR. CHAMBERS:  Care, yes, sir.

3           THE COURT:  Care.  Now, under 3A1.3, there's

4   another two-level enhancement for the victim being

5   physically restrained in the course of the offense.  Why

6   does the defendant disagree as to the appropriateness of

7   that enhancement?

8           MR. CHAMBERS:  Well, Your Honor, if you'll notice

9   in the statement of facts, it talks about, in paragraph 16,

10  there was a period during this incident where she was

11  restrained.

12          THE COURT:  Right.

13          MR. CHAMBERS:  But the parties have a disagreement

14  about the circumstances surrounding that, how that brief

15  moment, when she was placed in restraints, occurred.  And

16  based upon our dispute about how that occurred and the

17  circumstances under which there was -- everyone agrees that

18  there was a brief period of time during which she was placed

19  in handcuffs, but there's a disagreement about whether the

20  circumstances surrounding that are sufficient to support the

21  enhancement that the Court references.

22          THE COURT:  So are you saying that under the

23  guideline, there's some kind of temporal requirement -- it

24  has to be so many seconds or minutes before someone is

25  considered to be physically restrained?

1      MR. CHAMBERS:  No, it has more to do, Your Honor --

2  it's -- it's more the circumstances under which it occurred

3  than the time that elapsed.

4      THE COURT:  Oh, she was a victim restrained while

5  she was riding in the patrol vehicle?

6      MR. CHAMBERS:  No.

7      THE COURT:  So she was only restrained once the

8  defendant had her exit the vehicle?

9      MR. CHAMBERS:  Yes.

10      THE COURT:  All right.  And so the dispute is for

11  how long she -- and by "restrained," we're talking here

12  about being handcuffed.

13      MR. CHAMBERS:  Yes, sir.

14      THE COURT:  And is the defendant disputing she was

15  handcuffed to the vehicle?

16      MR. CHAMBERS:  Handcuffed where?

17      THE COURT:  To the vehicle.

18      MR. CHAMBERS:  She was not handcuffed to the

19  vehicle.

20      THE COURT:  If that was an allegation of the

21  Government, you would dispute that?

22      MR. CHAMBERS:  Yes.

23      THE COURT:  And you're disputing for how long she

24  was restrained?

25      MR. CHAMBERS:  I don't think that really the

1    temporal aspect of it is of critical importance, Your Honor.

2    We think it was fairly brief.  I'm not sure what the

3    Government feels --

4         THE COURT:  Mr. Fields is going to have his

5    opportunity.  This is your opportunity.

6         MR. CHAMBERS:  We believe it was brief, very brief.

7         THE COURT:  Are you disputing that she was

8    restrained at the time of the criminal civil rights

9    violation of violating her bodily integrity?

10         MR. CHAMBERS:  Yes, we are.

11         THE COURT:  Okay.  So that's why you would dispute

12    3A1.3.

13         MR. CHAMBERS:  Yes, sir.

14         THE COURT:  All right.  All right.  Let me get Mr.

15    Fields' position on those disputes.

16         MR. FIELDS:  Yes, Your Honor.  As you can see,

17    there will be significant disputes at sentencing.  The

18    Government's position is that the enhancement for serious

19    bodily injury will apply because of injuries to the victim's

20    vagina, tears to her vagina, that we are going to prove at

21    sentencing occurred during the course of the attack.

22         In terms of the restraint enhancement, the

23    Government will also be proving at sentencing that the

24    victim was handcuffed during the sexual act.  And because we

25    believe we will be able to prove that, that enhancement will

apply.

While I understand the Court sort of might look at these as academic because it's so much higher --

THE COURT:  I said it could be looked, I did not say I'm looking at them as academic.

MR. FIELDS:  I apologize, Your Honor.  But to the extent there's any indication that this might be academic, these enhancements are still very important to the Government because they show the seriousness of the offense. I expect at sentencing we're going to be arguing for a sentence of 10 years.  The defendant, based on facts it will present at sentencing, is going to be arguing for significantly less time.

THE COURT:  All right.  Now, I don't have the citation in front of me, but I understand from prior prosecutions, isn't there a separate sentencing enhancement for breach of official trust or something like that?

MR. FIELDS:  Yes, Your Honor.

THE COURT:  I forget exactly how it's phrased.  And I don't see that here.

MR. FIELDS:  No, Your Honor, I think that would actually be co-extensive with the six-level enhancement because this was committed under color of law.  So to avoid any double counting, I don't think that that enhancement, which would apply to a position of public trust, would

1    necessarily apply in this case.  The base offense level I

2    think already takes that into account.

3              THE COURT:  I see.  Okay.  Because that would be

4    duplicative.  I see.  Okay.  All right.  Thank you for that.

5              All right.  Anything else, Mr. Chambers, you want

6    to put on the record with respect to the major points of --

7    and important terms of the parties' plea agreement?

8              MR. CHAMBERS:  No, sir.

9              THE COURT:  All right.  Mr. Fields, do you have

10   anything to add to counsel's summary of the plea agreement?

11             MR. FIELDS:  No, Your Honor.  That was it.

12             THE COURT:  Okay.  All right, Mr. Arganbright, have

13   you read Court Exhibits 1 and 2?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  Have you discussed these documents with

16   your lawyer?

17             THE DEFENDANT:  Yes, Your Honor.

18             THE COURT:  Has your lawyer answered any questions

19   you may have had regarding Exhibits 1 and 2?

20             THE DEFENDANT:  Yes, Your Honor.

21             THE COURT:  When you signed Exhibits 1 and 2, did

22   you do so voluntarily?

23             THE DEFENDANT:  Yes, Your Honor.  All right.  I

24   need you to look at your plea agreement, which, as I've said

25   before, has been marked Exhibit 1.  I'm going to direct your

1    attention to page 7, paragraph 14, and I'll ask you to

2    review the stipulated facts in your agreement at paragraphs

3    14 through 20 to yourself and let me know when you've

4    concluded that.

5            THE DEFENDANT:  I have, Your Honor.

6            THE COURT:  All right.  These are the facts that

7    the Government believes it could prove at trial.  By

8    entering into this plea agreement, you are admitting these

9    facts and I will treat them as true for purposes of

10   considering your plea and for purposes of sentencing.  So do

11   you agree that the facts you've just reviewed at paragraphs

12   14 through 20 of your plea agreement are true?

13           THE DEFENDANT:  Yes, Your Honor.

14           THE COURT:  Is there any inaccuracy in these facts

15   you'd like to correct at this time?

16           THE DEFENDANT:  No, Your Honor.

17           THE COURT:  All right.  If you look on the bottom

18   of page 3 and concluding at the top of page 4, there's,

19   under the heading II, Elements of the Offense.  That's the

20   statutory language of the offense that you've been charged

21   with:  deprivation of rights under color of law.  But what I

22   always do with defendants to make sure that they understand

23   what it is they're pleading guilty to, I want you to put

24   into your own words why you believe you're here today.

25           THE DEFENDANT:  While working as a police officer,

1   I deprived a victim of her rights, and I did that so, you

2   know, my -- I guess my own will, and --

3               THE COURT:  What was that last thing you said?

4               THE DEFENDANT:  Of my own will.

5               THE COURT:  Okay.  And against her will?

6               THE DEFENDANT:  Yes.

7               THE COURT:  You admit whatever took place was

8   nonconsensual?

9               THE DEFENDANT:  Yes, Your Honor.

10              THE COURT:  Okay.  Go ahead.

11              THE DEFENDANT:  And then, of course, the last --

12  the last section, she sustained bodily injury from that --

13  from that deprivation.

14              THE COURT:  And so you are agreeing that you acted

15  willfully?  In other words, it wasn't by accident?

16              THE DEFENDANT:  Correct, Your Honor.

17              THE COURT:  All right.  You intended to do what you

18  did?

19              THE DEFENDANT:  Correct.

20              THE COURT:  All right.  What is it that you did?

21              THE DEFENDANT:  Well, I engaged in sexual acts with

22  the -- with the victim while I was giving her a --

23  transporting her home.  And then after that, I -- I had

24  taken her home.  But I don't know how -- if you want me to

25  go into more specifics or not.

1    THE COURT:  Well, I do, actually.  Is it true that

2    you had her -- your -- let's start where I understand the --

3    this unfolded.

4         She had checked herself into a hospital in

5    Westminster to deal with an alcohol or substance abuse

6    problem; is that correct?

7         THE DEFENDANT:  That's correct.

8         THE COURT:  Okay.  And what was your understanding

9    as to why you were called to the hospital?

10        THE DEFENDANT:  I was called to the hospital

11   because of a report that she was stealing items from the

12   hospital, which were gauze, needles, tape.  When I arrived,

13   I spoke with the staff on -- on duty and they explained that

14   to me.  I went and spoke with her.  And then I went back and

15   spoke with the staff as well and they told me that they

16   didn't want to pursue any charges.  After that --

17        THE COURT:  Charges of theft?

18        THE DEFENDANT:  That's correct, Your Honor.

19        THE COURT:  All right.

20        THE DEFENDANT:  After that, I asked if they had

21   tried to contact her mother.  They said that she wasn't

22   answering the phone.  I actually used my personal cell phone

23   and tried to contact her as well; was able to.  She

24   explained to me that she couldn't come pick her up and asked

25   me if I could give her a ride home.  It was --

1          THE COURT:  She asked you to give her a ride home
2    or did the hospital staff ask you to transport her to her
3    home?
4          THE DEFENDANT:  The -- the mother asked me to give
5    her a ride home.
6          THE COURT:  So what did the hospital ask you to
7    do -- hospital staff?
8          THE DEFENDANT:  She explained to me that she was
9    discharged and she was free to go.
10          THE COURT:  Why did she call you?
11          THE DEFENDANT:  For the theft.
12          THE COURT:  You said they weren't pressing charges
13    on theft.
14          THE DEFENDANT:  Correct.
15          THE COURT:  So what is your understanding as to why
16    the hospital staff called you -- or called Westminster
17    Police and the call was transferred to you?
18          THE DEFENDANT:  Maybe I -- you know, I don't know
19    if misunderstanding, but the -- you know, the hospital staff
20    thought that I would take her into custody and -- and
21    process her for the theft, but then they decided that they
22    didn't want to pursue any charges.
23          THE COURT:  Sir, what you're saying doesn't really
24    make much sense.  You're saying that the hospital staff
25    called you to inform you that they weren't going to press

1    charges, effectively, is what you're saying?  Or called the

2    Westminster Police Department, not you, personally.

3            THE DEFENDANT:  Well, they wanted an officer to

4    respond, but then --

5            THE COURT:  To what?

6            THE DEFENDANT:  The theft.

7            THE COURT:  But you're saying that the -- they were

8    not going to press charges against her.

9            THE DEFENDANT:  I don't know what conversation took

10   place between hospital staff --

11           THE COURT:  Okay, let me ask it this way:  Did the

12   staff at the hospital ask you to transport the victim to her

13   home?

14           THE DEFENDANT:  No, Your Honor.

15           THE COURT:  You said it was the victim's mother

16   that asked you to do that?

17           THE DEFENDANT:  Yes, Your Honor.

18           THE COURT:  All right.  Let's go -- let's go past

19   that point.  What happened next?

20           THE DEFENDANT:  The --

21           MR. CHAMBERS:  Your Honor, if I could  -- I think

22   that maybe the confusion -- and I'm not sure, but perhaps

23   the confusion is that the police were called, Mr.

24   Arganbright responded.  And while he was on scene, while he

25   was at the hospital, is the point in time when the hospital

1    made the decision that they did not want to press charges.

2            THE COURT:  Okay.  Okay.  And it's your

3    understanding, Mr. Chambers, that the hospital staff,

4    whoever it was, an official at the hospital, did not ask

5    your client to transport the victim to her home?

6            MR. CHAMBERS:  I believe that is correct.  I

7    believe it was the victim and the victim's mother together

8    who were asking for a ride.

9            THE COURT:  All right.  Proceed, Mr. Arganbright.

10            THE DEFENDANT:  So I escorted the victim out to my

11   patrol vehicle, completed a pat-down.  And then because of

12   comments that were made as far as issues that she would

13   have, she was placed in the front seat.

14            I drove -- drove her -- we drove to her --

15            THE COURT:  What did you mean by that?

16            THE DEFENDANT:  She said that she was

17   claustrophobic and she would freak out if she was put in the

18   back seat of my patrol vehicle.

19            THE COURT:  So your story is she asked you to ride

20   in the front with you?

21            THE DEFENDANT:  Yes, Your Honor.

22            THE COURT:  Go ahead.

23            THE DEFENDANT:  As we were driving to her

24   residence, I decided to pull over.  She got out of the

25   vehicle.  I got out of the vehicle and walked around --

1           THE COURT:  Did you ask her to exit the vehicle?

2           THE DEFENDANT:  No, I did not.

3           THE COURT:  Or did you -- she got out -- it's your

4   story she got out -- she left or exited the vehicle on her

5   own?  That was her idea?

6           THE DEFENDANT:  Correct.

7           THE COURT:  Go ahead.

8           THE DEFENDANT:  When I walked around the patrol

9   vehicle, she walked towards me and she put her hands out in

10  front of her and said, "Put those on me," which I believed,

11  you know, she was talking about my handcuffs.  So I put them

12  on her.  Her hands were in front.

13          And the -- she seemed, I guess the -- there was

14  giggles or laughs.  I didn't feel comfortable with the

15  handcuffs being on, so I took one off, and she slid the

16  other one off, so that it wasn't as if the handcuffs were

17  placed on tight.

18          At that time, we -- I tried to engage in vaginal

19  intercourse.  There was no penetration.  We walked --

20          THE COURT:  You said -- are you denying that you

21  had vaginal intercourse with the victim?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  So you're denying that it was forced

24  intercourse?

25          THE DEFENDANT:  Correct.

1          THE COURT:  To the extent there was any.

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  So what is it that you agree that you

4    did?

5          THE DEFENDANT:  Well, we -- we also -- I also

6    engaged in oral intercourse at the front of the vehicle.

7          THE COURT:  You told me earlier in the hearing that

8    whatever happened outside that vehicle was not consensual.

9    Are you changing your -- your position?

10          THE DEFENDANT:  No, I'm not, Your Honor.

11          THE COURT:  Okay.  So you are admitting that you

12    forced her to have oral sex with you?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  All right.  And you're denying that you

15    had nonconsensual vaginal intercourse with her?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  What else happened?

18          THE DEFENDANT:  After that, it was about, I'd say,

19    20 seconds after that I moved her away from me and I told

20    her, "We need to get you home."

21          She got back in the vehicle in the front seat and

22    went -- we got back on the -- on the roadway and continued

23    to her house.  She told me -- you know, gave me directions

24    on how to get there.  Pulled up in front of the house and

25    she went -- got her property out the back of the vehicle and

1    her mother came down.

2          We had approximately a three- to four-minute

3    conversation by the side of my patrol vehicle, and I gave

4    them both of my -- both her mother and the victim my

5    business card.  And at that time, they both went inside and

6    I left.

7          THE COURT:  Why did you give them your business

8    card?

9          THE DEFENDANT:  They requested it.

10          THE COURT:  Anything else you want to say in terms

11    of what happened that day that formed the basis, to your

12    understanding, of why you're being charged with the federal

13    crime you're pleading guilty to today?

14          THE DEFENDANT:  No, Your Honor.

15          THE COURT:  Mr. Fields, do we have a problem here

16    in terms of -- given what you just heard the defendant say,

17    does the Government believe there's still an acceptance of

18    responsibility for the act that caused the injuries to the

19    victim?

20          MR. FIELDS:  Yes, Your Honor, I do believe there's

21    an acceptance of responsibility and that this statement of

22    facts does meet the elements.  As you know, we're going to

23    have a lot of disputes at sentencing about what actually

24    happened.  The Government's going to present evidence that

25    there, for instance, was vaginal intercourse and that the

1    entire encounter was a lot more coercive and a lot more

2    violent and physical than what the defendant will admit to

3    here.  But within that dispute, there still is this core and

4    that is that Mr. Arganbright believes he is guilty, his

5    facts as he's stated them on the record here today make him

6    guilty.  And for those reasons, I think you can accept the

7    plea, and factual disputes will go to sentencing.

8              THE COURT:  All right.  So it's the Government's

9    position that notwithstanding the defendant's denial of

10   certain factual versions of what occurred, that what he does

11   admit to is sufficient for the elements of the crime

12   charged?

13             MR. FIELDS:  Yes, Your Honor.

14             THE COURT:  Okay.  Okay, based on that, counsel,

15   may the Court rely on the stipulated facts in the plea

16   agreement for the factual basis?

17             MR. FIELDS:  Yes, Your Honor.

18             MR. CHAMBERS:  Yes, Your Honor.

19             THE COURT:  All right.  Thank you, counsel.

20             All right.  Next, Mr. Arganbright, I need to advise

21   you that you have the constitutional right to be charged by

22   an indictment by a grand jury with regard to the charge in

23   the information to which you are pleading guilty.  So do you

24   give up your right to be indicted on the charge in the

25   information to which you'll be pleading guilty?

1              THE DEFENDANT:  Yes, Your Honor.

2              THE COURT:  With respect to that count, do you

3      agree to be charged solely on the basis of a criminal

4      complaint, otherwise known as an information, filed with

5      this Court by the United States Attorney's Office?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  All right.  All right, I will note for

8      the record that at ECF No. 5 -- all right, with respect to

9      the waiver of the indictment, I'll note that at ECF No. 5

10     filed on October 21st of this year, waiver of indictment was

11     signed by the defendant as well as his attorney and was

12     approved by Magistrate Judge Kato Crews of this Court.

13             All right.  Now, sir, in addition, I need to advise

14     you of the additional constitutional rights you will be

15     giving up if you plead guilty.  You have the right to plead

16     not guilty to any offense charged against you.  You have the

17     right to a speedy and public trial.  You have the right to a

18     trial by a jury of 12 persons whose verdict must be

19     unanimous.

20             At trial, you'd be presumed innocent and the

21     Government would have to prove your guilt beyond a

22     reasonable doubt.  You have the right to the assistance of

23     legal counsel for your defense throughout these proceedings

24     even if you do not enter a plea of guilty.  You have the

25     right with your lawyer to confront and cross-examine all

1    witnesses at trial and to challenge all evidence presented

2    against you.

3         At trial, you have the right to have witnesses

4    subpoenaed and compelled to come into court to testify on

5    your behalf.  At trial, you would have the right to testify

6    yourself on your own behalf, but you would also have the

7    privilege against self-incrimination; that means you have

8    the right not to testify or incriminate yourself in any way.

9    By pleading guilty, you're giving up that right and you are

10   incriminating yourself.

11        If you went to trial and were convicted, you would

12   have the right to appeal both your conviction and your

13   sentence.  Now, do you understand these rights?

14        THE DEFENDANT:  Yes, Your Honor.

15        THE COURT:  Do you understand that if your plea is

16   accepted, you will be incriminating yourself, you will be

17   giving up your right to a jury trial, and most of the other

18   rights I've just described?

19        THE DEFENDANT:  Yes, Your Honor.

20        THE COURT:  Do you give up those rights?

21        THE DEFENDANT:  Yes, Your Honor.

22        THE COURT:  All right, Mr. Chambers, let's put on

23   the record the scope of your client's limited waiver of his

24   appeal and collateral challenge rights.  And, as you know

25   from prior hearings, what I'm looking for are the exceptions

1    to those limited waivers.

2           MR. CHAMBERS:  Yes, Your Honor.  First of all, Mr.

3    Arganbright understands that even without a waiver, that an

4    appeal after a plea is very limited.  But he's waiving even

5    that right to appeal with the following exceptions:  One,

6    that this sentence does not exceed the statutory maximum;

7    and, two, he would have a right to appeal if the government

8    appeals.

9           THE COURT:  You mean that he waives his direct

10   appeal right unless the sentence I impose exceeds the

11   statutory maximum?

12          MR. CHAMBERS:  Yes, sir, or if the Government

13   appeals.

14          THE COURT:  Or if the Government appeals.

15          MR. CHAMBERS:  Yes, sir.

16          THE COURT:  All right.

17          MR. CHAMBERS:  As to a collateral attack, he would

18   have -- he waives his right to file a petition pursuant to

19   28 U.S.C. 2255 except in these three circumstances:  One, if

20   there's an explicit retroactive change in the law that would

21   affect his sentence; if he was denied effective assistance

22   of counsel; or if there's a claim of prosecutorial

23   misconduct.

24          THE COURT:  All right.  Thank you.

25          Mr. Arganbright, do you understand and do you agree

1    to the limitations in your plea agreement on your right to

2    appeal the sentence I will impose in this case?

3           THE DEFENDANT:  Yes, Your Honor.

4           THE COURT:  Do you understand and do you agree to

5    the limitations in your plea agreement on your right to

6    challenge this prosecution or your conviction?

7           THE DEFENDANT:  Yes, Your Honor.

8           THE COURT:  And just so I know that you

9    specifically understand this one provision of your waiver,

10   that with respect to a direct appeal -- so you understand

11   the difference between a direct appeal and what we've called

12   a collateral challenge, which is a habeas filing under 2255;

13   do you understand those two distinctions?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  All right.  And under a direct appeal,

16   you understand that as long as I do not sentence you to more

17   than 10 years in custody, or as long as the Government does

18   not appeal, that you are waiving your right to appeal?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  All right.

21          MR. CHAMBERS:  Your Honor, I suppose the sentence

22   could be greater than the statutory maximum in other ways

23   other than being greater than 10 years.

24          THE COURT:  How is that --

25          MR. CHAMBERS:  Well, if the term of supervised

1    release is greater than the maximum or a fine greater than

2    the maximum --

3              THE COURT:  I see.

4              MR. CHAMBERS:  But we all know what you're talking

5    about.

6              THE COURT:  Okay.  Thank you for that.  That's a

7    good point.

8              Did you understand what your lawyer just said?

9              THE DEFENDANT:  Yes, Your Honor.

10             THE COURT:  So I could -- if I exceeded the

11   statutory maximum in terms of a period of supervised

12   release, you could also appeal.

13             THE DEFENDANT:  Yes, Your Honor.

14             THE COURT:  All right.  All right, Mr. Fields, will

15   you please inform the defendant of the charge to which he'll

16   be pleading guilty.  Please state the elements of the

17   charge, the maximum sentence, and maximum fine.

18             MR. FIELDS:  Yes, Your Honor.  The defendant will

19   be pleading guilty to Count 1 of the information which

20   charges deprivation of rights under color of law.  That's a

21   violation of 18 United States Code Section 242, and it has

22   the following four elements:

23             First, the defendant acted under color of law when

24   he committed the acts charged; second, the defendant

25   deprived the victim of a right protected or secured by the

1   constitution or laws of the United States.  That is, in this

2   case, the 14th Amendment's guarantee of substantive due

3   process, which includes the right to bodily integrity.  The

4   third element is that the defendant acted willfully; and the

5   last element is that the defendant's conduct resulted in

6   bodily injury to the victim.

7          A violation of that statute carries the following

8   penalties:  Not more than 10 years imprisonment, a fine of

9   not more than 250,000, or both a fine and imprisonment; not

10  more than five years of supervised release; a $100 special

11  assessment fee; and, to the extent the Court determines so

12  at sentencing, mandatory restitution.

13         THE COURT:  Thank you, counsel.

14         Mr. Arganbright, do you understand the consequences

15  of your plea, including the maximum sentence that can be

16  imposed upon you in this case?

17         THE DEFENDANT:  Yes, Your Honor.

18         THE COURT:  Mr. Chambers, what is the estimated

19  sentencing range you believe applies under the guidelines,

20  again understanding where the statutory max is?

21         MR. CHAMBERS:  Your Honor, we believe it is 168 to

22  210.

23         THE COURT:  All right.  And, Mr. Fields, what's the

24  Government's position as to the appropriate --

25         MR. FIELDS:  We believe --

1          THE COURT:  I'm sorry?

2          MR. CHAMBERS:  I apologize, Your Honor.

3          THE COURT:  That's all right.  Go ahead.

4          MR. CHAMBERS:  We believe that the guidelines would

5    come out to offense level 43 and recommend of life.

6          THE COURT:  Life imprisonment.  Thank you.

7          Do you understand, sir, that I can impose a

8    sentence more severe or less severe, up to the statutory

9    maximum, than set forth in your plea agreement?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  Do you understand that even if you are

12    disappointed with the sentence that I do impose, that that

13    will not be a basis for you to withdraw your guilty plea?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  Do you understand that when you're

16    released from prison, some of the conditions of your release

17    to which you may be subject include that you may not commit

18    any new federal, state, or local crime, and you may not

19    possess any illegal substance?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  Do you understand that if you violate

22    any conditions of supervised release, you may be returned to

23    prison for all or part of the remaining term of supervised

24    release?

25          THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  Are you presently on parole, probation,

2     or supervised release as the result of a conviction of any

3     other crime?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  Well, put that on the record.

6          THE DEFENDANT:  I'm on probation with the 17th

7     Judicial District.

8          THE COURT:  All right.  And that's the probation

9     that was part of the sentence that you received from the

10    17th Judicial District concerning the same events in this

11    case?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  All right.  Now, you understand that

14    these are separate prosecutions --

15         THE DEFENDANT:  Yes, Your Honor.

16         THE COURT:  -- right?

17         And -- but what -- for purposes of today, what I

18    need you to understand is that your plea of guilty this

19    morning today in this case may be considered by the state

20    court district judge as a violation of probation in that

21    case.

22         THE DEFENDANT:  Yes, Your Honor.

23         THE COURT:  All right.  You understand that?  Do

24    you understand that you're pleading guilty today to a felony

25    offense?

1              THE DEFENDANT:  Yes, Your Honor.

2              THE COURT:  Do you understand that conviction of a

3      felony offense may deprive you of certain civil rights,

4      including the right to possess a firearm, the right to vote,

5      the right to hold public office, and the right to serve on a

6      jury?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  Do you understand that in the federal

9      system, parole has been abolished and, although you may earn

10     good time depending on your behavior, if you are sent to

11     prison you will not be released on parole?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  Has anyone threatened you or your

14     family in order to force you to plead guilty in this case?

15             THE DEFENDANT:  No, Your Honor.

16             THE COURT:  Are you satisfied with the

17     representation your attorney's provided to you?

18             THE DEFENDANT:  Yes, Your Honor.

19             THE COURT:  Have you understood everything that I

20     have told you or asked of you today?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  Understanding the rights you'll be

23     giving up and the maximum sentence you may receive, do you

24     still wish to plead guilty?

25             THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  All right.  Other than arraigning the

2     defendant on Count 1 of the information, do counsel agree

3     the Court has complied with the requirements of Rule 11?

4          MR. FIELDS:  Your Honor, one minor point, and it's

5     a very formalistic one.

6          THE COURT:  Sure.  Well, go ahead.

7          MR. FIELDS:  We've already discussed that the

8     defendant will be registering as a sex offender and that he

9     will have to give up any professional licensure.

10          THE COURT:  Right.

11          MR. FIELDS:  But when you're discussing the

12     collateral pleas, we didn't talk about it -- collateral

13     consequences of the plea, we didn't talk about it in that

14     context.

15          THE COURT:  I see.

16          MR. FIELDS:  So I want to make sure the defendant

17     understands that those are collateral consequences of a plea

18     to this charge.

19          THE COURT:  All right.  Do you understand what the

20     prosecutor just said or do you need me to repeat that?

21          THE DEFENDANT:  I understand that, sir.

22          THE COURT:  Okay.  So that those -- as Mr. Fields

23     just summarized, and we've talked about at the beginning of

24     the hearing, those are also collateral -- what the law calls

25     collateral consequences of your guilty plea.  You understand

1    that?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  All right.  Apart from that, Mr.

4    Fields, does the Government agree that I've complied with

5    the requirements of Rule 11?

6              MR. FIELDS:  Yes, Your Honor.

7              THE COURT:  How about for the defendant?

8              MR. CHAMBERS:  Yes, Your Honor.

9              THE COURT:  All right.  Thank you, Mr. Chambers.

10             All right.  The defendant's plea of not guilty as

11   to Count 1 of the information is withdrawn.

12             Mr. Fields, will you please re-arraign the

13   defendant.

14             MR. FIELDS:  Yes, Your Honor.

15             Mr. Arganbright, you've been charged in a one-count

16   information with a violation of Title 18 United States Code

17   Section 242, which charges deprivation of rights under color

18   of law.  Have you received a copy of this information?

19             THE DEFENDANT:  Yes, I have.

20             MR. FIELDS:  Have you reviewed it?

21             THE DEFENDANT:  Yes, I have.

22             MR. FIELDS:  Do you waive a formal reading of this

23   information?

24             THE DEFENDANT:  Yes, I do.

25             MR. FIELDS:  Understanding this information and the

1  maximum statutory penalties associated with it, how do you

2  plead, guilty or not guilty?

3          THE DEFENDANT:  Guilty.

4          THE COURT:  Thank you, counsel.  All right, the

5  Court makes the following findings of fact and conclusions

6  of law:  In the matter of the United States of America

7  versus Curtis Arganbright, case No. 19-cr-445.  The

8  defendant is fully competent of entering an informed plea

9  and he is aware of the nature of the charge and the

10  consequences of that plea.  The defendant has thoroughly

11  discussed his plea agreement with his attorney.  The

12  defendant has been represented throughout the course of this

13  case by competent counsel with whom he has no objection or

14  complaint.

15          The defendant has read and he understands each term

16  of his plea agreement, including his limited waiver of his

17  direct appeal and collateral challenge rights.

18          The defendant has knowingly and voluntarily signed

19  Court Exhibits 1 and 2.  The defendant has knowingly and

20  voluntarily entered a plea of guilty to Count 1 of the

21  information with a full understanding of the factual basis

22  and essential elements of the charge.  The defendant's

23  guilty plea is not the result of mistake or coercion.  The

24  defendant's guilty plea is not the result of any

25  representations or promises made to him by anyone except as

1    to those matters disclosed in open court or included in his

2    plea agreement.

3            The defendant understands each of his legal rights

4    in this case.  The defendant understands that the Court is

5    not bound by the sentence recommended in the plea agreement

6    and that if the Court does not follow any such

7    recommendation, the defendant may not withdraw his guilty

8    plea.

9            The defendant understands the maximum sentence of

10   imprisonment, maximum fine, and terms of supervised release

11   that the Court may impose under the terms of his plea

12   agreement.  And, finally, the plea is supported by an

13   independent factual basis containing each of the essential

14   elements of the offense.

15           It is therefore ordered that Court Exhibits 1 and 2

16   are accepted and admitted.  The plea as made in open court

17   today is accepted and the defendant is adjudged guilty of

18   violating 18 United States Code Section 18 -- 18 United

19   States Code Section 242.  Sentencing hearing is hereby set

20   for March 11th, 2020, at 9:30.

21           Earlier at ECF 15, I entered an order directing

22   counsel to be prepared to discuss whether the defendant

23   should be ordered to be immediately remanded to the custody

24   of the United States Marshal today or whether he should --

25   he shall remain free on bond pending his sentencing hearing.

1        I usually start with the defendant, but I want to

2    ask you, Mr. Fields, because we don't get too many of these

3    criminal civil rights charges here, is -- is this a -- a

4    crime that's under 3143 that makes immediate remand

5    mandatory absent exceptional circumstances under 3145(c)?

6        MR. FIELDS:  No, Your Honor.  The Government's

7    position is that *United States v. Rogers*, 371 F.3d 1225,

8    it's a Tenth Circuit case from 2004, holds that the Court

9    must use the categorical approach when determining what

10   counts as a crime of violence.  242 can be violated without

11   using violence and, therefore, the Government's position is

12   it's not categorically a crime of violence.

13       Under those --

14       THE COURT:  From the categorical approach, but

15   specific to the facts of this case at sentencing the

16   Government's going to be arguing that there was violence.

17       MR. FIELDS:  Yeah.  Your Honor, the law's a little

18   bit weird here, yes, in this particular --

19       THE COURT:  That's what we get with this

20   categorical approach, right?  We're expected to just put the

21   blinders on as to what actually happened in a particular

22   case and just look at the category of the cases.

23       MR. FIELDS:  Correct, Your Honor.  So --

24       THE COURT:  All right, so -- I'm sorry, go ahead.

25       MR. FIELDS:  And then, Your Honor, we also believe

1    that he's not a flight risk or a danger to the community.

2    He's still under his probation with state court so he's

3    receiving supervision through that.  He's also on his

4    federal bond.  He's been compliant with both and he's

5    voluntarily come into court here today, Your Honor.  So for

6    all those reasons, we don't think he's a flight risk now.

7           We would reserve argument on what should happen at

8    sentencing in terms of immediate remand --

9           THE COURT:  Right.

10          MR. FIELDS:  -- for these current circumstances --

11          THE COURT:  Right.  I never take -- when the

12   Government takes a position like you just did at the change

13   of plea, I never take it as a waiver of the Government's

14   ability to argue at sentencing that there should be -- there

15   should be no voluntary surrender, that, in fact, there

16   should be immediate remand at the sentencing.  I understand

17   that.

18          MR. FIELDS:  Thank you, Your Honor.

19          THE COURT:  All right.  Mr. Chambers, let me hear

20   from you.

21          MR. CHAMBERS:  Your Honor, I agree that it is

22   not under 3143(2), that it is not a mandatory remand

23   situation.  And we also agree that he is neither a flight

24   risk or a danger to the safety of the community, therefore,

25   we agree with the Government not requesting remand.

1          He -- as Mr. Fields also correctly points out, he

2     is -- he's been on probation in the 17th Judicial District

3     for 10 months and has been fully compliant.  I have a letter

4     from the probation office if you would like to see it.

5          THE COURT:  I'll take your representation as an

6     officer of the Court.

7          MR. CHAMBERS:  And he's also been fully compliant

8     with the counseling and treatment that he's been required to

9     take -- or participate in and, as part of his probation in

10    the 17th Judicial District, he's been compliant with that

11    and he's compliant with his federal bond.  So we agree.

12         THE COURT:  What -- remind me of what is the bond

13    that Judge Crews set?

14         MR. CHAMBERS:  It's an unsecured bond, Your

15    Honor.

16         THE COURT:  In what amount?

17         MR. CHAMBERS:  I can't remember.  10 grand, I want

18    to say.

19         THE COURT:  10,000?  Okay.  I know it's a standard

20    condition of pretrial release, but I just want to confirm on

21    the record, has your client surrendered his passport?

22         MR. CHAMBERS:  He does not have one.

23         THE COURT:  All right.  Mr. Arganbright, let me ask

24    you, then, directly:  Have you -- since you are aware of the

25    investigation into that case, or at any time, have you filed

1       an application for a United States passport?

2               THE DEFENDANT:  No, Your Honor.

3               THE COURT:  All right.  So this is just to advise

4       you that it would be a very unwise move on your part to

5       apply for a U.S. passport because we would find out pretty

6       quickly and I can guarantee you that would result in your

7       immediate arrest.

8               THE DEFENDANT:  Yes, sir.

9               THE COURT:  Do you understand that?

10              THE DEFENDANT:  Yes, Your Honor.

11              THE COURT:  All right.

12              MR. CHAMBERS:  Could I have a moment?

13              THE COURT:  Sure.

14              MR. CHAMBERS:  Thank you, Your Honor.

15              THE COURT:  Okay.  All right.  I have reviewed the

16      pretrial services and release status reports from the

17      probation office.  I find by clear and convincing evidence

18      that the defendant's conditions of release reasonably assure

19      that he will not flee nor does he pose a danger to the

20      safety of the community.  I will, therefore, permit the

21      defendant to remain free on bond subject to the same

22      conditions of release as set forth in the order setting

23      conditions of release entered by the U.S. Magistrate Judge.

24              All right.  Is there anything further from the

25      Government at this time?

44

1          MR. FIELDS:  No, Your Honor.  Thank you.

2          THE COURT:  All right.  Anything further from the

3    defendant?

4          MR. CHAMBERS:  No, Your Honor.  Thank you.

5          THE COURT:  All right.  Thank you.  That will be

6    all.

7          (Proceedings concluded at 11:26 a.m.)

8                    *     *     *     *     *

9                    REPORTER'S CERTIFICATE

10        I certify that the foregoing is a correct transcript

11   from the record of proceedings in the above-entitled matter.

12        Dated at Denver, Colorado, this 13th day of January,

13   2020.

14

15

16

17   _                                                        _

18                    MARY J. GEORGE, FCRR, CRR, RMR

19

20

21

22

23

24

25