1          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF COLORADO
2
     Criminal Action No. 19-cr-0445-WJM
3
     UNITED STATES OF AMERICA,
4
     Plaintiff,
5
     vs.
6
     CURTIS ARGANBRIGHT,
7
     Defendant.
8
     ------------------------------------------------------------
9
                     REPORTER'S TRANSCRIPT
10                     (Status Hearing)

11   ------------------------------------------------------------

12        Proceedings before the HONORABLE WILLIAM J. MARTINEZ,

13   Judge, United States District Court for the District of

14   Colorado, commencing at 9:33 a.m., on the 14th day of

15   October, 2020, in Courtroom A801, United States Courthouse,

16   Denver, Colorado.

17
                         APPEARANCES
18
          BRYAN D. FIELDS, Assistant U.S. Attorney, 1801
19   California Street, Suite 1600, Denver, Colorado 80202,
          MAURA D. WHITE and KATHERINE G. DeVAR, U.S. Department
20   of Justice-DC-950 Pennsylvania Avenue, 950 Pennsylvania
     Avenue-N.W., Washington, DC 20530, appearing for the
21   plaintiff.

22        NATHAN D. CHAMBERS, Nathan D. Chambers, LLC, 303 16th
     Street, Suite 200, Denver, Colorado, AND
23        L. DOUGLAS JEWELL, Law Office of Douglas Jewell, LLC,
     3000 Youngfield Street, Suite 185, Wheat Ridge, Colorado
24   80215, appearing for the defendant.

25

1          MARY J. GEORGE, FCRR, CRR, RMR
          901 19th Street, Denver, Colorado 80294
2     Proceedings Reported by Mechanical Stenography
          Transcription Produced via Computer
3                  P R O C E E D I N G S

4          (Call to order of the court at 9:33 a.m.)

5          THE COURT:  All right, we are on the record in

6     criminal case No. 19-cr-445, United States of America versus

7     Curtis Arganbright.  I'll takes appearances of counsel

8     beginning with the Government here present in the courtroom.

9          MR. FIELDS:  Good morning, Your Honor.  Bryan

10    Fields for the United States.  And I'm joined virtually by

11    counsel in D.C., Maura White and Katherine DeVar, who you

12    should see via VTC.

13         THE COURT:  Yes, I do.  All right.  Thank you, Mr.

14    Fields.  All right, which one of you is Ms. DeVar?  I think

15    you're muted.

16         MS. DeVAR:  I'm here, Your Honor.

17         THE COURT:  Okay.  Where are you located?

18         MS. DeVAR:  I'm located in Washington, D.C.

19         THE COURT:  At your residence?

20         MS. DeVAR:  Yes, Your Honor.

21         THE COURT:  All right.  Okay.  And so Ms. White is

22    the other attorney here appearing remotely for the

23    Government?

24         MS. WHITE:  Yes, Your Honor.  Good morning.

25         THE COURT:  Good morning.  And where are you

1    located?

2              MS. WHITE:   I'm also located in D.C., Your Honor.

3              THE COURT:   At your residence?

4              MS. WHITE:   Yes, that's correct.

5              THE COURT:   Okay.   Appearances for the defendant.

6              MR. CHAMBERS:   Good morning, Your Honor.   Nathan

7    Chambers and Doug Jewell representing Curtis Arganbright.

8    He is present at counsel table seated to my left.

9              THE COURT:   All right.   Good morning to the three

10   of you.

11             All right.   We had been scheduled for a sentencing

12   hearing today.   Last week I granted the defendant's motion,

13   this time, to continue the sentencing hearing for at least

14   90 days.   I converted this sentencing hearing time slot to a

15   status conference because I wanted to discuss with all you

16   folks what it is that we need to do to set a final

17   sentencing hearing date and get this matter to a conclusion.

18             I'll tell you, frankly, I'm very frustrated with

19   the delays.   I understand and acknowledge in the beginning,

20   in the spring when I entered the original continuance it was

21   because the pandemic was newly upon us.   We weren't having

22   any in-person hearings in our courthouse and I took that

23   action.

24             Things have evolved since then.   Obviously we're

25   having hearings in this courtroom.   I had a jury trial last

1    week, so things are very different from March and April.

2        I'm frustrated because it seems like I have a

3    moving target in front of me and I want to pin down what it

4    is from each side's perspective that needs to get done or

5    that they need to have in place so that when I set the next

6    sentencing hearing, which I -- date which I intend to be the

7    final setting, what it is that we need to do between now and

8    then to make sure that that hearing goes forward on that

9    date.

10        Mr. Fields, let me start with you.  From the

11    Government's perspective, what -- how do you respond to my

12    points there?

13        MR. FIELDS:  Thank you, Your Honor.  First as a

14    preliminary matter, may I have the Court's permission to

15    consult with co-counsel as necessary via cell phone?

16        THE COURT:  Sure.

17        MR. FIELDS:  Okay.  Your Honor, from our

18    perspective, the stipulation of facts in this case by itself

19    results in a guidelines calculation that both sides agree is

20    well above -- the offense level would give us a guideline

21    calculation well above the statutory max.  It would trigger

22    5 -- Section 5 of the guidelines, and the recommended

23    sentence would be 10 years.  So we agree that the guidelines

24    disputes maybe don't need to be resolved at all.  Instead,

25    they sort of become a proxy battle over how serious this

1    offense was under Section 3553(a).

2         We think the Court can resolve that -- that issue,

3    3553(a), in sentencing with the stipulation of facts and

4    with everything that's in the record.  If that's the case,

5    then there's no need for live witnesses, which would make

6    the logistics of this hearing a lot easier.  The difficulty

7    with the way things currently stand is if the Court needs

8    live testimony to resolve some of these disputes, two of the

9    Government's witnesses, Nurse Theresa Lindsey and Nurse John

10   Tomaso regularly treat COVID patients, which makes it

11   extremely unlikely that they will ever be allowed into the

12   courthouse under the Court's current general orders because

13   they will have been in contact with someone who's positive

14   for COVID-19 within the past 14 days.

15        So that is the big logistical hurdle and that is, I

16   think, what is making this somewhat intractable

17   logistically, even as we learn more about the pandemic.

18        THE COURT:  All right.  I agree with you that it's

19   a curious situation where, just from the stipulated facts in

20   the plea agreement in terms of the sexual assault that took

21   place, and the elements of the count to which the defendant

22   has pled guilty, that the guideline range, as you say, is

23   well above the statutory maximum.

24        And so I'm having trouble understanding -- it's

25   sort of the tail wagging the dog here.  We have maybe more

1    from the defendant's perspective -- and I'll let defense

2    counsel speak for themselves in a few minutes -- this

3    searing need or necessity to put in front of me certain

4    witnesses, which in the normal times I could see, well, you

5    know, if there's some logistical delay, we can reset it

6    once, maybe twice, get everybody in here.  But in this -- in

7    this situation that we're facing, to rely on or emphasize

8    the unavailability of either witnesses or co-counsel,

9    it's -- that is what's the source of my frustration.

10           As you know, Mr. Fields, having -- and Mr.

11   Chambers -- I don't know Mr. Jewell that well, but I assume

12   you've practiced in this courtroom -- courthouse before, 98

13   out of a hundred of our sentencing hearings take place in

14   this courthouse with one U.S. Attorney on one side, one

15   defense counsel, and no witnesses.  We go with the record

16   that we have.  We have the discovery, we have the

17   presentence investigation report, we have the stipulated

18   facts in the plea agreement, and that's all we need.

19           This would be a very different situation if the

20   guideline -- there were sentencing enhancements that might

21   or might not apply based on disputed facts which would

22   increase or decrease the guideline sentencing range all

23   below the statutory maximum.  Because I think -- I think I

24   would be much more ready and flexible to accommodate parties

25   and counsel because that's what we do here, that's what I

1    do, and if we're -- if we have a factual dispute going to a

2    sentencing enhancement that has an actual effect on the

3    guideline range, then that would be a night-and-day

4    situation from where we are.  But we're not.  And that's my

5    frustration.  So thank you for that, Mr. Fields.

6              And, Mr. Chambers, or Mr. Jewell, who's ever going

7    to handle the hearing today for the defendant, I'll hear

8    from you.

9              MR. CHAMBERS:  Yes, Your Honor, thank you.  First

10   of all, I understand the Court's frustration and I believe

11   you have good cause to be frustrated.  I would say a couple

12   things.  Let me start by saying --

13             THE COURT:  Hold on.  What's that noise?  Is that

14   the public access line?

15             COURTROOM DEPUTY:  Well, Your Honor, I'm not sure

16   because we were connected earlier in this hearing.  I could

17   try disconnecting it and reconnecting it, but --

18             THE COURT:  Disconnecting what?

19             COURTROOM DEPUTY:  The public line.  I don't know

20   what else that could be.

21             THE COURT:  Do you know if anyone is on the public

22   access line?

23             COURTROOM DEPUTY:  I connected about eight minutes

24   before we started and there was no one, but from my

25   understanding from Mr. Fields there are a couple of agents

1    that were attempting -- or going to attend.

2              THE COURT:  Is that your understanding, Mr. Fields?

3              MR. FIELDS:  Yes, Your Honor.  They were going to

4    try to dial in if available.

5              THE COURT:  Okay.  Yeah, I mean, that's fine.  So

6    are we having technical difficulties with the public access

7    line?

8              COURTROOM DEPUTY:  Your Honor, I don't know what

9    that was.

10             THE COURT:  Okay.  All right.

11             COURTROOM DEPUTY:  I can try hanging up and

12   reconnecting it, if --

13             THE COURT:  And then the folks who are currently on

14   it would have to dial back in?

15             COURTROOM DEPUTY:  I believe so.

16             THE COURT:  Okay.  So one of the frustrating

17   things, and this really hit home with my trial last week, is

18   that, you know, the public access line is our way -- the

19   courts, not just here but I think throughout the country, to

20   try in some fashion to abide by the notion that we have

21   public courts in this country.  And because our juries are

22   now having to be seated in the gallery because they don't

23   all fit in the jury box because of the distancing issues, we

24   are not allowing the public, quote-unquote, to be physically

25   present in the courtroom.  So open courts during the

1    pandemic has been effectively changed to open public access

2    lines.

3            And the problem is we have no way of knowing who is

4    on the public access line, who is listening, who is not

5    listening.  And so whoever is listening on the public access

6    line, case agents for the Government, whoever else, press,

7    my courtroom deputy is going to disconnect the public access

8    line now and she's going to reconnect and then it's

9    incumbent on you, if you want to continue to follow the

10   proceedings, to reconnect with that line.

11           Go ahead, Ms. Frank.

12       (Pause)

13           COURTROOM DEPUTY:  Okay, Your Honor, I hope that

14   took care of it.

15           THE COURT:  Hopefully that will do it.  Sorry for

16   the interruption, Mr. Chambers.  Go ahead.

17           MR. CHAMBERS:  I guess I would first observe that I

18   don't disagree with a lot of what Mr. Fields said.  I think

19   we all recognize that -- the disputes over the guidelines,

20   at least as a guideline qua guideline, are really academic

21   disputes.  And I also agree -- I will paraphrase Mr. Fields,

22   that these disputes -- these factual disputes are really

23   something like a proxy for the seriousness of the offense,

24   and I -- I think that's pretty accurate.

25           So I understand the Court's view that these factual

1    disputes may be taking on less significance in this case

2    than in others.  I would also add to that that much of the

3    factual information that we would like the Court to consider

4    is in the record.  There is the stipulation of facts in the

5    plea agreement.  And, in addition, we have filed --

6                THE COURT:  Go ahead.

7                MR. CHAMBERS:  Shall I continue?

8                THE COURT:  Yes.  We're going to soldier through.

9                MR. CHAMBERS:  Okay.  We have -- we filed

10   pleadings --

11               THE COURT:  Who's on the line, please?  Hello?

12               Go ahead, Mr. Chambers.

13               MR. CHAMBERS:  Okay.  The Court knows, we -- there

14   have been numerous filings in this case.

15               COURTROOM DEPUTY:  Your Honor, based on now hearing

16   people that can't hear us and there's nothing changed on my

17   screen, I have a feeling we're getting another courtroom.

18               THE COURT:  Oh, yeah, that's Ms. Ziman.  Okay.

19   We're going to cut off the public access line.  If someone

20   wants to complain, they can take it up with the chief.

21               COURTROOM DEPUTY:  Your Honor, I actually don't

22   think it's the public access line, I think it's the video

23   conference line, which I've just muted, so I don't know if

24   they can hear that.  I would have to disconnect the VTC is

25   what I guess I am saying.

1          THE COURT:  Can you please communicate to IT, tell

2    them that we're getting another hearing's audio-piped into

3    our courtroom.  Do we know what other hearings are going on

4    right now?

5          COURTROOM DEPUTY:  I don't have that on the top of

6    my head.

7          THE COURT:  Okay.

8          MR. FIELDS:  Your Honor.

9          THE COURT:  Yes.

10          MR. FIELDS:  I can tell you that my co-counsel can

11    still hear these proceedings so if we mute them, they can

12    communicate with me via cell phone; I can make sure that

13    they're still able to participate.

14          THE COURT:  Okay.

15          MR. FIELDS:  And I think we can just proceed and

16    put it on mute.

17          THE COURT:  Let's do that.

18          COURTROOM DEPUTY:  And I think worst-case scenario

19    if they want to call in the public access line, it's not the

20    best --

21          THE COURT:  That's true.

22          COURTROOM DEPUTY:  But --

23          THE COURT:  So why don't you mute it --

24          COURTROOM DEPUTY:  I think this is muting it, but

25    I -- can I just check quick?

1          THE COURT:  Yeah.

2          COURTROOM DEPUTY:  Are you guys able to hear me?

3     Just nod.  Okay.

4          So I don't know if I'm muting -- I have video

5     conference on mute.  I don't know if that --

6          THE COURT:  Okay.  While we're going -- proceeding,

7     please contact IT and tell them this is a repeat of what

8     happened last week.

9          COURTROOM DEPUTY:  Okay.

10         THE COURT:  I'm sorry, counsel.  I apologize.  Go

11    ahead.

12         MR. CHAMBERS:  Let's see.  Where was I?

13         THE COURT:  It's hard to keep your train of

14    thought, isn't it?  Imagine putting on a trial with this.

15         MR. CHAMBERS:  Well, Your Honor, the factual

16    disputes -- the record's not bare.  There is the stipulation

17    of facts in the plea agreement and, additionally, both

18    parties have submitted to the Court, and is part of the

19    record, significant factual information.  We have submitted

20    an appendix of 150-some pages, together with some exhibits,

21    to both our motion for variant sentence and our objections

22    to the presentence investigation report.  The Government has

23    likewise supplemented the record with other evidence.  So

24    it's not like there --

25         THE COURT:  Right.

1          MR. CHAMBERS:  These factual issues -- the evidence

2     that we are largely going to rely on is in the record and

3     we -- to clear up what may be a misconception here, I think

4     the Government intends to call more witnesses than we do.

5     These are their witnesses:  Mr. Tomaso -- Nurses Tomaso and

6     Lindsey.  We --

7          THE COURT:  And let me focus your comments a little

8     more.  Between now and the next sentencing hearing date,

9     which will be the final one, what, from the defendant's

10    perspective, still needs to be done, is in progress of being

11    done, is still open-ended such that it has to be completed

12    before you're ready to go?

13         MR. CHAMBERS:  Well, we're ready, Your Honor.  I

14    think that only -- the only thing that needs to be resolved

15    is how witnesses and counsel in D.C. are going to

16    participate.  And we -- we -- I've had conversations with

17    Mr. Fields going back to May or June about this issue.  And

18    we -- we are also sensitive to the fact that Tomaso and

19    Lindsey continue to see people with COVID.  And if they are

20    going to testify, that could go on for years, and obviously

21    we can't continue to go on for years.

22         I think the only thing that needs to be resolved is

23    how these people participate and we are willing to agree --

24    and I'm not sure if the Court even needs our acquiescence on

25    that --

14

1          THE COURT:  On what?

2          MR. CHAMBERS:  On whether witnesses can participate

3     by video conferencing.

4          THE COURT:  No, I do not need your permission.

5          MR. CHAMBERS:  Now, you need -- you would need our

6     consent to conduct a full-on video conferencing

7     sentencing --

8          THE COURT:  Of course.

9          MR. CHAMBERS:  -- but as I look at it --

10          COURTROOM DEPUTY:  Your Honor, at this point, I

11     just think we should have -- I think it makes the most sense

12     to have them call in the public line.  I really don't --

13          THE COURT:  Okay.  And then disconnect the VTC

14     audio?

15          All right, Ms. DeVar and Ms. White, would you

16     please -- do you have the public access line connection

17     information?  Okay.  So we're going to disconnect the VTC

18     audio line and please call in to the public access line and

19     you can follow us audially through that mechanism.

20          Go ahead.  Mr. Fields didn't have all these

21     interruptions, he was able to give his thoughts in one

22     coherent presentation.  Go ahead, sir.

23          MR. CHAMBERS:  I'm not all put off by that, I know

24     that there's technical issues here and just have to live

25     with them.

1          THE COURT:  Uhm-hum.

2          MR. CHAMBERS:  Should I continue?

3          THE COURT:  Yes, please.

4          MR. CHAMBERS:  I have -- I've reviewed the Court's

5    practice standards, I have looked particularly at Section

6    2(f), but that seems to deal more with civil proceedings

7    because the Court there cites Civil Rule of Procedure 43,

8    which is very different than Criminal Rule of Procedure 26.

9    43 contemplates video -- taking testimony by video in both

10   trials and motions hearings in a civil matter.

11         THE COURT:  Right.

12         MR. CHAMBERS:  Rule 26, on the other hand, is

13   limited to requiring in-person testimony but only at a

14   trial.  And I don't believe that the Federal Rules of

15   Criminal Procedure specifically address the use of video

16   conferencing for testimony at a motions hearing.

17         But it -- Rule -- neither Rule 26 or Rule 43, nor

18   the Court's practice standards, address participation of

19   counsel by video conferencing.  So I just don't know the

20   answer to all these questions.

21         THE COURT:  Right.

22         MR. CHAMBERS:  But that's the issue that needs to

23   be resolved.  We -- we don't want to be jerks about it; we

24   want to try to be accommodating.  And if people need to

25   testify by video conferencing, we're okay with that to some

degree, and with counsel participation by video

conferencing.  We don't want to turn this into -- and we

will not agree to turning this into a video conferencing

sentencing.

THE COURT:  All right.  So your client continues to

insist on being personally present in the courtroom and he

does not consent to being sentenced remotely?

MR. CHAMBERS:  Yes, sir.

THE COURT:  Okay.  That's his right.  I think I

understand what you're saying.  Thank you, Mr. Chambers.

First, let me talk about the -- whether witnesses

can testify remotely in my view.  I also am aware of no law

that precludes the remote testimony of a witness at a

sentencing hearing.  I note that to whatever extent in

rule -- in the civil or criminal rules with respect to this

issue, to the extent that they're based, at least in large

part, on the rules of evidence, I note that the Federal

Rules of Evidence, as counsel all know, do not strictly

apply at a sentencing hearing.  And so let me say that about

that.

I've given a lot of thought of how it is that we

can set another -- the next hearing and then no further

hearings after that.  One thing I will note, I want to get

on the record in terms of my frustration, just so it's not

something that's in a vacuum -- put on the record in a

1    vacuum, it arises out of the fact that the information in

2    this case was filed on the 21st of October of 2019, almost

3    exactly a year ago.

4           The notice of disposition was two days later on the

5    23d of October of 2019.  Again, almost a year ago.  If I go

6    three-plus months out from here per the defendant's motion's

7    request, we're looking at 15 months from notice of

8    disposition to sentencing, which is, even in this era, a

9    long time in my courtroom, and that's what's frustrating me.

10          So here's what we're going to do.  As I said

11   before, 98 out of a hundred of my sentencing hearings have

12   one lawyer on each side.  At this next hearing, whoever can

13   and has the ability or desire to be present in terms of

14   out-of-town counsel are free to participate in the

15   sentencing hearing, but the sentencing hearing will not be

16   delayed because one or both of Ms. DeVar or Ms. White are

17   not available to come to Denver on this day.  We will go

18   forward with Mr. Fields as the lead AUSA.  He's an

19   experienced and seasoned prosecutor.  He's done trials in

20   front of me, he's done several hearings, I know he is up to

21   the task.

22          As to Mr. Chambers and Mr. Jewell, you're both

23   perfectly -- both able to handle this sentencing hearing as

24   well.  If one of you can't make it, well, that's too bad, we

25   will go forward on the sentencing hearing date with just one

1    of you.  I -- the defendant's decision to not testify to a

2    VTC sentencing hearing is acknowledged and is respected and

3    he will be expected to be in the courtroom on that date.

4         Before I go on to the other things I've been

5    thinking about, let me sort of break through the suspense of

6    what day I'm looking at.  We're going to reset this

7    sentencing hearing to Wednesday, January 20th, 2021, at 9:30

8    a.m.  So all attorneys who are planning on participating in

9    the sentencing hearing must be present in person.  The

10   defendant will be present in person.

11        I will allow -- so that we don't have, again, the

12   tail wagging the dog, I will allow witnesses to testify

13   remotely.  As you can imagine, witness testimony via VTC in

14   this era, especially if we're dealing with exhibits, is not

15   an ideal situation to be in.  We -- I had two witnesses

16   testify remotely in my trial.  That went rather smoothly

17   because I think they only had like one exhibit to look at.

18        The main point with respect to remote witnesses is

19   that all witnesses must have copies of the exhibits that are

20   going to be used with them on both direct and

21   cross-examination.  Because obviously there's no way for us

22   to teleport an exhibit to them while they're on the stand.

23        I'm going to direct counsel to file notice, both

24   sides, by a week before that hearing, January 13th, 2021, a

25   notice of what mode and manner in which their witnesses are

1    going to testify, identifying the witness.  And actually,

2    just to -- as a -- to make sure that this doesn't fall

3    through the cracks because of the -- logistically it is a

4    very difficult situation when we have a remote witness and

5    no exhibits.  Ms. Frank, I'm going to ask you to put on your

6    personal calendar, if counsel fail to file something by the

7    13th of January, for you to contact them and inquire as to

8    this matter.

9         If any witness is testifying remotely, Ms. Frank

10   will forward to you, email to you, instructions on very

11   specific step-by-step of what the witnesses have to do to be

12   prepared.

13        Witnesses are, of course, welcome to testify in

14   person in this courtroom.  We had live -- we had both live

15   witnesses and remote witnesses at my trial.  They worked --

16   they worked fine.  And so it's not -- I don't want counsel

17   to hear my comments as implying in any way that witnesses

18   must testify remotely.

19        Let me bring up another thing in terms of what I

20   can foresee -- I'm trying to think ahead of what could

21   possibly delay the sentencing beyond January 20th -- and it

22   arises out of the fact of something that happened to me

23   about two weeks -- three weeks ago with a defendant.  We

24   were right on the eve of his sentencing hearing and he

25   claimed -- he claimed -- his lawyer communicated with us and

1    claimed that he was feeling COVID-like symptoms, and

2    admitted himself into a hospital.  Turns out he didn't have

3    COVID.  And that derailed that hearing for several weeks.

4    And I mention that just because I'm not accusing anyone here

5    of trying to manipulate the situation that we have facing

6    us, but my colleagues and I are starting to get the sense

7    that there are some defendants out there who are refusing to

8    consent to remote VTC sentencing, or change of plea, or

9    final revocation, whatever the case may be, and then somehow

10   make -- somehow something comes up and they can't be here in

11   person.

12         So the only way that I will delay the sentencing

13   hearing beyond January 20th for a medical reason by either

14   lead Government counsel, lead defense counsel, or the

15   defendant, is if prior to -- no later than the day before,

16   Tuesday, January 19th, we receive in chambers a letter from

17   a physician certifying that counsel or the defendant has

18   tested positive for COVID in the prior 14 days, or has a

19   life-threatening illness that requires hospitalization.

20   Beyond that, I can't think of any way else to, again -- even

21   though I'm not accusing anyone of any manipulation here -- I

22   want to avoid it.  I don't want on January 19th or 15th to

23   be hearing that folks aren't feeling well and they maybe

24   can't attend.  We're going to go forward with this, unless,

25   of course, it is a true health emergency.  And in my view, a

1    positive diagnosis of COVID, which can be -- if there's

2    comorbidities or risk factors involved, can be a

3    life-threatening situation, as we all know, and/or any other

4    non-COVID ailment that may require the hospitalization of

5    lead counsel or the defendant, but I will only accept that

6    with a letter by a physician attesting to the severity of

7    those conditions.

8          Let me take a moment to review my notes to see what

9    else I need to cover.

10         I think I have covered everything.  I had

11   anticipated counsel's remarks about what was yet to be done

12   and what needed to be focused on in terms of being able to

13   set one final hearing.  I think I've dealt with those.  If

14   counsel can think of something else that we should address

15   today to ensure, to the greatest extent possible, the

16   likelihood or the near certainty -- of course nothing is

17   certain in life -- but the near certainty of a sentencing

18   hearing going forward on January 20th, now is the time to

19   speak up.

20         So, Mr. Fields, if you want to take a moment to

21   consult with your co-counsel and then let me know if you

22   have anything else to add.

23         MR. FIELDS:  Thank you, Your Honor.  I just sent

24   them a message.  If I could have just a couple of seconds.

25         THE COURT:  Sure.  We'll wait a minute.

1          MR. FIELDS:  Your Honor, I think what I'll say is

2    this:  If the Court wants testimony, that is completely

3    within your discretion as to whether or not you actually

4    want a hearing.  The United States is comfortable moving

5    forward based on the paper record, which might make

6    logistics a lot easier.  So I think what I would do at this

7    point is formally ask the Court whether it really needs a

8    hearing in this matter.  If it does, we'll have the

9    witnesses available just as you've laid out.  But if you

10   don't, we can all proceed based on the paper record.

11         THE COURT:  Well, that's an excellent point and

12   excellent question.  I think my prior comments in earlier

13   hearings and in earlier filings should have made that clear,

14   but I will restate it for the record.  I am not requiring

15   any witness testimony.  I, too, believe that I am prepared

16   to go forward with the sentencing of Mr. Arganbright based

17   on the significant record that is before me already,

18   including the stipulated facts, the conventionally submitted

19   materials, the discovery in the case that's available to me

20   through the probation officer, and I am not in need and I am

21   not requiring and I am not ordering any additional

22   witnesses.

23         Having said that, I don't want to stand in the way

24   of either side, in terms of their counsel, exercising their

25   fiduciary duty to represent their clients vigorously and

23

1    dutifully.  If they wish to put on witnesses, I will accept

2    witness testimony, but with the limitation that I have

3    already outlined:  that it can be in person or remote, but

4    if they're not ready to go remotely or in person, we're not

5    going to delay this hearing.

6         And, actually, that brings to mind a point that I

7    didn't make clear.  The inability of a witness to appear

8    remotely or in person on January 20th will also not be a

9    basis for me to continue this hearing.  The only basis, I

10   want to repeat, that I will continue a hearing is for the --

11   if I receive medical documentation, as I discussed before,

12   with respect to the Assistant United States Attorney who

13   will be handling the hearing, defense counsel who will be

14   handling the hearing, or the defendant.

15        If I get a list of five witnesses from both sides

16   and none of them are ready to go on the 20th because they're

17   out of the country, they're feeling ill, they're on

18   vacation, tough; we're going forward.  Did I -- did that

19   answer your question, Mr. Fields?

20        MR. FIELDS:  Thank you, Your Honor.  Under those

21   circumstances, the United States is ready to proceed on the

22   paper record, and if there's a day available before January

23   2021, the United States would ask that the sentencing be set

24   at the soonest possible time.

25        THE COURT:  I will take that as an oral motion to

1    reset the schedule -- the next sentencing hearing that I

2    just set and I'm going to deny that oral motion based on the

3    fact that I think defense counsel has a right to rely on the

4    fact that I granted the motion No. 47.  And defense counsel

5    in that motion specifically requested a continued hearing no

6    less than 90 days into the future.  I've already made that

7    decision and I'm not going to change that.

8           Mr. Chambers, is there -- same question to you:

9    Any other logistical, legal issue, complication, that you

10   could think of that we haven't covered here that would

11   smooth the path to us having a hearing on January 20th?

12          MR. CHAMBERS:  No, Your Honor.  Thank you.  And in

13   light of Mr. Fields' representation to the Court about

14   witnesses, I will confer with him, because that may change

15   our witness list.

16          THE COURT:  Okay.

17          MR. CHAMBERS:  It certainly will change our witness

18   list.

19          THE COURT:  Yeah.  Well, what I would ask, as a

20   courtesy to the Court, if you both have decided -- whatever

21   you decide -- and I'm not setting a deadline for this -- the

22   January 13th was to advise us that you had witnesses and

23   they were going to appear and testify remotely.  But any

24   time between today and January 13th, if the two of you can,

25   for example, decide you will not be calling any witnesses or

1    only one witness or whatever is the agreement, please file

2    something and then that helps me know what I have to be

3    preparing for.

4              MR. CHAMBERS:  Very well.

5              THE COURT:  All right.

6              MR. CHAMBERS:  Thank you, sir.

7              THE COURT:  All right.  Once more for the record,

8    the sentencing hearing in this case is continued and reset

9    to Wednesday, January 20th, 2021, at 9:30 a.m.

10             The defendant's bond is continued.  Thank you, that

11   will be all.

12             (Proceedings concluded at 10:11 a.m.)

13

14                   *     *     *     *     *

15                    REPORTER'S CERTIFICATE

16         I certify that the foregoing is a correct transcript

17   from the record of proceedings in the above-entitled matter.

18         Dated at Denver, Colorado, this 7th of January, 2021.

19

20

21

22

23             MARY J. GEORGE, FCRR, CRR, RMR

24

25