

**U.S. Department of Justice**
Federal Bureau of Prisons

*North Central Regional Office*

---

*Regional Medical Director*

*400 State Avenue*
*Tower II, Suite 800*
*Kansas City, KS 66101*

January 19, 2021

Bryan D. Fields
Assistant United States Attorney
United States Attorney's Office
 District of Colorado
1801 California Street, Suite 1600
Denver, Colorado  80202

    RE: <u>United States v. Curtis Arganbright</u>
        Case No. 1:19-cr-00445-WJM

Dear Mr. Fields:

    This is in response to your inquiry concerning Curtis Arganbright the defendant in the above-captioned matter. I have been asked to address whether the Federal Bureau of Prisons (BOP) has the ability to meet his medical needs during his period of incarceration. Based on my review of this issue, there is no reason Mr. Arganbright's medical needs cannot be met within the BOP should he be incarcerated.

    My review of this matter is based on my medical training and BOP work experiences. I am a licensed physician and am Board Certified in Family Medicine through the American Board of Family Medicine (ABFM). In addition, I am a Certified Wound Specialist Physician through the American Board of Wound Management (ABWM). I have been employed as a medical physician with the BOP since June 2014, and I currently serve as the Regional Medical Director for the BOP's North Central Regional Office (NCRO). As the NCRO Regional Medical Director, I am responsible for overseeing the delivery of medical care within the North Central Region, which includes seventeen institutions, two Medical Referral Centers, and six Community Corrections Centers. Prior to this, I served as the Clinical Director at the Federal Medical Center in Fort Worth, Texas, where I oversaw and provided clinical care to inmates with varying degrees of medical condition.

    When designating an offender to an institution, the BOP carefully considers the offender's health status to determine his CARE Level under the BOP's medical classification system, which in turn affects his institution designation. **CARE Level 1 inmates** are generally healthy, but may have limited medical needs, such as mild asthma or diet-controlled diabetes, which can be easily managed by clinician evaluations every six months. **CARE Level 2 inmates** are stable outpatients who require at least quarterly clinician evaluations for medical needs such as medication-

controlled diabetes or epilepsy. These inmates can be managed at regular chronic care clinics, but they may need enhanced medical resources from time to time, but not regularly. **CARE Level 3 inmates** are fragile outpatients who require frequent clinical contacts to prevent hospitalization for catastrophic events or may require periodic hospitalization to stabilize their medical conditions, such as severe congestive heart failure or end-stage liver disease. These inmates may require some assistance with activities of daily living from inmate companions, but they do not need daily nursing care. **CARE Level 4 inmates** require services available at a Medical Referral Center (MRC) and may require daily nursing care. The MRC facilities have clinical staff available in-house, 24-hours per day, and have contracts with community specialists for additional review and/or care, if clinically necessary. The BOP has seven MRCs, located in Lexington, Kentucky; Devens, Massachusetts; Rochester, Minnesota; Springfield, Missouri; Butner, North Carolina; Carswell, Texas (female only); and Fort Worth, Texas.

The BOP's Designation and Sentence Computation Center will review an offender's available medical records, and if there are serious health concerns, the designation decision will be referred to the Office of Medical Designations and Transportation (OMDT). OMDT will determine whether the offender should be designated to a MRC where more comprehensive resources are available. This initial designation will be re-evaluated as time progresses and the offender's medical condition changes.

Regardless of their designated institution, all inmates are assigned to a Primary Care Provider Team (PCPT), to ensure essential care is delivered via Chronic Care Clinics, sick call, and scheduled appointments. Upon arrival to the designated BOP facility, the PCPT reviews available medical records and considers the inmate's personal provider's treatment recommendations, if available. Every institution, including general population institutions, is equipped to deal with medically ill inmates. Each institution maintains a Health Services Unit to provide medical, dental, and mental health care. As necessary, contracted facilities and community specialists are utilized to augment the institution's resources.

I have reviewed eight (8) pages of medical records provided to me concerning Mr. Arganbright. From these records, I can conclude the BOP has the necessary staff and resources to properly manage his current medical needs, as well as unanticipated medical needs that may arise. From my review of his records, it appears that Mr. Friedrichsen had been previously diagnosed and successfully treated for COVID-19, including hospitalization and intubation. He has been released from the outside hospital, and appears stable. He also appears to have a newly diagnosed condition of Type 2 Diabetes Mellitus. The records are very limited in nature and do not provide information related to any post-discharge follow-up care, including any medications related to blood clots in his lungs. Based on my review of these very limited records, Mr. Arganbright would likely be classified as a CARE Level 2 inmate, and would be designated to a facility commensurate with his needs. It has been reported to me that Mr. Arganbright is currently on a medication, Eloquis, also known by its generic name Apixaban, to treat blood clots, Deep Vein Thrombosis and Pulmonary Embolisms and its potential recurrence. The use of this medication, which is on the BOP's formulary, is appropriate at a CARE Level 2 facility.

      Mr. Arganbright's medical condition appears to be stable and requires routine monitoring and care, which the BOP provides to inmates in its custody.  Routine follow-up such as that recommended for Mr. Arganbright, including placement in the chronic care clinic for monitoring of his Type 2 Diabetes Mellitus as well as any other identified chronic conditions as appropriate, can be provided at a CARE Level 2 facility.[1]  Please keep in mind that any anticipated designation may change following a review of additional medical records, changes in condition prior to formal designation, and an in-person medical evaluation upon arrival at the designated facility.

      If necessary and appropriate, consultations with specialists may be sought to determine the most effective treatment regimen for Mr. Arganbright. Please note, however, that medical decisions regarding a patient's care, including treatment recommendations, are made contemporaneous with the symptoms exhibited. Accordingly, this initial opinion may change as Mr. Arganbright's medical condition changes, or upon a review of more complete medical records.  Due to security concerns inherent in any BOP institution, Mr. Arganbright's treatment plan may need to be modified from the current plan, but our medical providers will strive to achieve the best treatment results and will work closely with him to make the transition into a BOP facility as smooth as possible.

      Sincerely,

      Syed Fateh-Hyder, M.D.
      NCRO-Regional Medical Director

---

[1] Of note, the Federal Correctional Institution in Englewood, Colorado, which has a detention facility, is a Care Level 2 facility.